IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:17-CR-00249 |
| v. | (Chief Judge Brann) |
| JOSEPH SENTORE COLEMAN, JR., | |
| Defendant. | |

MEMORANDUM OPINION

MAY 25, 2022

## I.     BACKGROUND

In 2017, Joseph Sentore Coleman, Jr., was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] The matter eventually proceeded to a three-day trial. The United States Court of Appeals for the Third Circuit summarized the evidence presented at trial as follows:

> Law enforcement received information from a confidential informant ("CI") that Coleman sold firearms. The CI agreed to contact Coleman to purchase a gun. The CI arranged the purchase with Coleman via text message. In one message, Coleman told the CI that he had "a few joints," meaning firearms, for sale. The pair corresponded about the types of firearms and their prices, and they agreed to meet.
>
> Before the meeting, law enforcement searched the CI to ensure he did not possess any contraband or firearms. The CI was then "outfitted with a recording device," and he drove to meet Coleman. Their entire meeting was recorded.

---

[1]   Doc. 1.

During the meeting, the CI and Coleman discussed several firearms that Coleman could provide to the CI. The CI then purchased a 9-millimeter firearm from Coleman for $400. After the purchase, the CI placed the gun in the trunk of his car and drove Coleman to a nearby convenience store to buy cigarettes. During the car ride, Coleman described other guns he sold, as well as those he had in his possession. Coleman also described various sexual encounters, spoke about women in a degrading manner, and talked about territorial conflicts he had with others in the area. After their meeting, the CI met the investigators, who retrieved the firearm from the trunk of the car. They also searched the CI once more, again finding no contraband.[2]

As a result of this evidence, the jury convicted Coleman of the charge lodged against him,[3] and the Court ultimately sentenced Coleman to 120 months' imprisonment.[4] Coleman appealed his conviction, raising a single issue: that this Court erred in admitting the recording of the conversation between Coleman and the CI.[5] The Third Circuit rejected Coleman's argument, concluded that the recording was admissible pursuant to Federal Rule of Evidence 404(b), and affirmed Coleman's conviction and sentence.[6]

In April 2021, Coleman filed a timely 28 U.S.C. § 2255 motion challenging his conviction.[7] Coleman argues that the Court erred in admitting two pieces of evidence: the recordings that he challenged in his direct appeal, and photocopies of text messages exchanged between Coleman and the CI.[8] Coleman further argues that

---

[2] *United States v. Coleman*, 802 F. App'x 59, 61 (3d Cir. 2020) (citations omitted).
[3] Doc. 58.
[4] Doc. 71.
[5] *Coleman*, 802 F. App'x at 60-61.
[6] *Id.* at 62-64.
[7] Doc. 82.
[8] *Id.* at 4-6.

his trial attorney was ineffective in two ways. First, Coleman contends that counsel was ineffective for failing to request that the firearm at issue be tested for fingerprints or DNA evidence.[9] Second, Coleman asserts that counsel was ineffective in failing to file a pretrial motion to suppress the firearm, rather than waiting until trial to file such a motion.[10]

The Government has responded to Coleman's § 2255 motion and argues that the motion is without merit.[11] Coleman has not filed a reply brief, and the matter is therefore ripe for disposition. For the reasons discussed below, the Court will deny Coleman's motion.

## II.  DISCUSSION

### A.  Admission of Evidence

Coleman first asserts that this Court erred in admitting recordings of Coleman's conversation with the CI on the day of the firearm sale despite having previously ruled that portions of the conversation were inadmissible, and in admitting photocopies of text message exchanges between Coleman and the CI since "there was nothing to prove that these messages were from" Coleman.[12]

As to Coleman's challenge to the admission of the recording of the conversation between himself and the CI, as previously noted, Coleman raised this

---

[9]  *Id.* at 7.
[10] *Id.* at 8.
[11] Doc. 90.
[12] Doc. 82 at 4-5.

issue on direct appeal and his argument was rejected by the Third Circuit.[13] It is well established that "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal"[14] and, accordingly, "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion."[15] Because this issue was resolved in Coleman's direct appeal, he may not pursue such a claim in his § 2255 motion.

Next, although Coleman challenges the admission of the text messages between himself and the CI, the Court likewise cannot reach the substance of that claim, as Coleman failed to raise that claim on direct appeal and has therefore committed procedural default. The United State Supreme Court has long held that there is a "general rule that claims not raised on direct appeal may not be raised on collateral review unless the [movant] shows cause and prejudice"[16] or is able to demonstrate "that he is actually innocent."[17] To show cause for procedural default, "a defendant must show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim."[18] "Examples of external impediments which have been found to constitute cause in the procedural default context include

---

[13] *Coleman*, 802 F. App'x at 62-64.
[14] *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (Alito, J., concurring).
[15] *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014).
[16] *Massaro v. United States*, 538 U.S. 500, 504 (2003). *See also Travillion*, 759 F.3d at 288 n.11 (noting that "issues which should have been raised on direct appeal may not be raised with a § 2255 motion").
[17] *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks omitted).
[18] *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (quoting *McCleskey v. Zant,* 499 U.S. 467, 493 (1991)).

interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel."[19]

Here, Coleman's claim that the Court erred in admitting evidence of the text messages could have been raised on direct appeal but was not. Coleman therefore committed procedural default, and this Court may consider that claim only if Coleman is able to establish cause and prejudice, or actual innocence.[20] The Court concludes that he cannot. First, as to actual innocence, Coleman presents no new evidence that was not previously available during his trial; this precludes the possibility that, on the current record, the Court may find that Coleman is actually innocent of his crimes of conviction.[21]

As to whether cause exists to excuse Coleman's procedural default, the only possible cause would be ineffective assistance of counsel. However, there is ample evidence to support the notion that the text messages were sent by Coleman, including testimony from the CI who confirmed that the photocopies were accurate depictions of the text messages exchanged between himself and Coleman, along with testimony from a law enforcement officer who confirmed that he had photographed the text messages from the CI's phone, and that the number involved in the text

---

[19] *Id.* (internal quotation marks omitted).
[20] *Massaro*, 538 U.S. at 504.
[21] *See Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) ("To satisfy the demanding actual innocence exception, a [movant] must (1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.*, a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence").

messages was associated with Coleman.[22] Given that the uncontested evidence established that the text messages were sent by Coleman and the CI, counsel did not perform deficiently in failing to raise this issue on appeal, nor was Coleman prejudiced by that failure. Accordingly, Coleman's procedural default may not be excused, and the Court will not reach the merits of this argument.

### B. Ineffective Assistance of Counsel

Next, Coleman argues that counsel was ineffective in failing to request that the firearm at issue be tested for fingerprints or DNA evidence, and for failing to file a pretrial motion to suppress the firearm, rather than waiting until trial to file such a motion.[23]

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[24] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[25] In analyzing whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[26] As the United States Supreme Court has emphasized:

---

[22]   Doc. 77 at 34-41, 114-23.
[23]   Doc. 82 at 7-8.
[24]   *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[25]   *Id.* (quoting *Strickland*, 466 U.S. at 687).
[26]   *Strickland*, 466 U.S. at 690.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[27]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[28] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[29] In other words, a movant must establish a "a substantial likelihood" that any errors "changed the outcome of . . . trial."[30]

As to Coleman's assertion that counsel was ineffective in failing to request that the firearm be tested for fingerprints or DNA evidence, the Court finds that, even assuming counsel performed deficiently, Coleman suffered no resulting prejudice in light of the overwhelming evidence of his guilt.

---

[27] *Id.*
[28] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[29] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).
[30] *Branch v. Sweeney*, 758 F.3d 226, 238 (3d Cir. 2014).

First, text messages displayed to the jury confirmed that Coleman and the CI arranged for the CI to purchase firearms from Coleman at a set price and time.[31] Second, prior to the controlled sale of the firearm from Coleman to the CI, law enforcement searched both the CI—via a strip search—and his vehicle to ensure that no contraband was present.[32] No firearms or other contraband were found during this search.[33] The CI was likewise searched after conducting the controlled firearm purchase—no contraband was found, and the CI immediately turned over to law enforcement the handgun that he had purchased from Coleman.[34] Third, the audio and visual recordings of the transaction that were played for jury,[35] wherein Coleman discussed the fact that he had been selling firearms to others—including an "M12" and Uzi machine gun—and stated that he had "guns galore," which supported the notion that Coleman had possessed the identified firearm and sold it to the CI. This evidence overwhelming established that Coleman had possessed a firearm, and Coleman cannot therefore establish a reasonable probability that the outcome of trial would have been different had the firearm been tested for fingerprints or DNA. Coleman has therefore failed to establish prejudice, and this claim must be denied.[36]

---

[31] Doc. 77 at 34-41, 114-23.
[32] *Id.* at 41-43, 74-75, 101-03, 123, 126-27.
[33] *Id.* at 43.
[34] *Id.* at 42-46, 129-32.
[35] *Id.* at 47-49, 55-61, 133-38, 176-80.
[36] *See Hutchinson v. Superintendent Greene SCI*, 860 F. App'x 246, 249 (3d Cir. 2021) (holding "given the overwhelming evidence against [appellant], we do not believe the alleged deficient performance of his counsel had a reasonable probability of affecting the outcome"), *cert. denied sub nom. Hutchinson v. Zaken*, No. 21-7437, 2022 WL 1295769 (U.S. May 2, 2022); *Copenhefer v. Horn*, 696 F.3d 377, 390 (3d Cir. 2012) ("In light of the overwhelming evidence

As to Coleman's assertion that counsel was ineffective for failing to file a pretrial motion to suppress the firearm, rather than waiting until trial to file such a motion,[37] that claim likewise fails. First, the Court cannot conclude that counsel performed deficiently. After jury selection was completed, counsel filed a motion *in limine* seeking to exclude audio and visual recordings of the controlled purchase between Coleman and CI on the grounds that the evidence was irrelevant, and any probative value was substantially outweighed by the danger of unfair prejudice.[38] Based on the arguments presented by counsel, the Court granted the motion and precluded portions of the recordings.[39] Consequently, counsel was successful in excluding portions of the recordings, although that success was short lived since, in light of Coleman's defense that the CI had planted the firearm and framed Coleman for the offense, the Court later revised its decision and found that the entirety of the recordings were admissible.[40] In light of this, Coleman simply cannot show that counsel performed deficiently.

Second, given that this Court initially granted Coleman's motion to suppress the evidence—but ultimately reversed that ruling after Coleman presented his theory

---

against Copenhefer, we agree with the District Court that he cannot show he was prejudiced"); *United States v. Vitillo*, 490 F.3d 314, 318 (3d Cir. 2007) ("Because we find no prejudice with regard to prosecutorial misconduct, as the evidence of guilt is overwhelming, we will affirm the District Court[] . . .").

[37] Doc. 82 at 7-8.
[38] Doc. 46.
[39] Doc. 77 at 13.
[40] *Id.* at 169-71.

of the case—there is no indication that the outcome of the motion, let alone the trial, would have been different had counsel filed the motion earlier. Additionally, for the reasons stated above, given the overwhelming evidence of Coleman's guilt, the Court cannot conclude that Coleman was prejudiced by counsel's failure to file a pretrial motion to suppress the evidence.

### C. Certificate of Appealability

Because this Court will deny Coleman's § 2255 motion, this decision will not be appealable unless this Court or a circuit justice issues a certificate of appealability.[41] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[42] To satisfy this standard Coleman must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claims is debatable or wrong.[43] This Court finds that Coleman has not met this burden, and the Court therefore declines to issue a certificate of appealability.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Coleman's 28 U.S.C. § 2255 motion must be denied. The Court will also deny a certificate of appealability.

---

[41] 28 U.S.C. § 2253(c)(1)(B).
[42] *Id.* § 2253(c)(2).
[43] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge